IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ETSY, INC., and RACHANA KUMAR,

Plaintiffs,

vs.

UR MENDOZA JADDOU, Director, U.S.
Citizenship and Immigration Services,

Defendant.

**4:22CV3022**

**MEMORANDUM AND ORDER
REGARDING DEFENDANT'S MOTION
TO DISMISS COUNT I**

This case is before the Court on the Motion to Dismiss by defendant Ur M. Jaddou, Director, United States Citizenship and Immigration Services (USCIS), seeking dismissal of Count I of Plaintiffs' Amended Complaint. Filing 31. The challenged count alleges that the so-called "*Kazarian* Policy Memorandum"—concerning determination by USCIS of I-140 petitions for visas for persons with "extraordinary abilities"—"is the sub-regulatory adoption of a failed proposed legislative rule in violation of the [Administrative Procedure Act (APA)] and [the Immigration and Nationality Act (INA)]." Filing 30 at 14 (subtitle to Count I). Defendant contends that this count fails to state a claim on which relief can be granted where courts have held that the policy in question is not a "legislative" rule, so it was properly adopted without "notice and comment." Defendant also contends that this claim is untimely. Thus, Defendant seeks dismissal of this claim pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure. For the reasons set out below, Defendant's Motion to Dismissal is granted.

## I.  INTRODUCTION

The narrow focus of Defendant's Motion is whether USCIS complied with the APA in promulgating an administrative policy memorandum, which is a question of law. *See United States v. Hacker*, 565 F.3d 522, 524 (8th Cir. 2009) (stating in dicta that challenges to procedural

1

compliance under the APA present "a question of law, which we review de novo"), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011)). Thus, the pertinent background relates to that policy memorandum rather than to Plaintiffs' efforts to secure an "extraordinary abilities" visa for plaintiff Rachana Kumar.

### A. Background

*1.      The Statutory and Regulatory Bases for "Extraordinary Ability" Visas*

The preference allocation for employment-based immigrants is established by statute. *See* 8 U.S.C. § 1153(b). One such preference category is "aliens with extraordinary ability." 8 U.S.C. § 1153(b)(1)(A). The statutory qualifications for aliens with extraordinary ability are the following:

(A) Aliens with extraordinary ability

An alien is described in this subparagraph if--

(i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

 (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

 (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).

The pertinent regulation implementing this statutory category of visas provides that "[a]n alien, or any person on behalf of an alien," may petition for classification as an "alien of extraordinary ability" by filing an I-140 visa petition. 8 C.F.R. § 204.5(h)(1). It then defines "extraordinary ability" for purposes of the regulation to mean "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." *Id.* at (h)(2). The next subdivision of the regulation provides as follows:

> (3) Initial evidence. A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following [ten listed achievements.]

8 C.F.R. § 204.5(h)(3).[1] There is a caveat that "[i]f the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." *Id.* at (h)(4). Finally, as pertinent here, the regulation states,

> (5) No offer of employment required. Neither an offer for employment in the United States nor a labor certification is required for this classification; however, the petition must be accompanied by clear evidence that the alien is coming to the United States to continue work in the area of expertise. Such evidence may include letter(s) from prospective employer(s), evidence of prearranged commitments such as contracts, or a statement from the beneficiary detailing plans on how he or she intends to continue his or her work in the United States.

---

[1] The ten listed achievements, often called "regulatory criteria," are the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x).

8 C.F.R. § 204.5(h)(5).

        2.       The *"*Kazarian *Policy Memorandum"*

On December 22, 2010, USCIS issued a Policy Memorandum, PM-602-0005.1, with the stated subject, "Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual (AFM)* Chapter 22.2, AFM Update AD11-14" (the *Kazarian* Policy Memorandum). Filing 30-1 at 1. The stated purpose of the *Kazarian* Policy Memorandum was as follows:

> This Policy Memorandum (PM) provides guidance regarding the analysis that U.S. Citizenship and Immigration Service (USCIS) officers who adjudicate these petitions should use when evaluating evidence submitted in support of Form I-140, Immigrant Petition for Alien Worker, filed for:
>
> - Aliens of Extraordinary Ability under section 203(b)(1)(A) of the Immigration and Nationality Act (INA);
>
> - Outstanding Professors or Researchers under section 203(b)(1)(B) INA; and
>
> - Aliens of Exceptional Ability under section 203(b)(2) INA.
>
> The purpose of this PM is to ensure that USCIS processes Form I-140 petitions filed under these employment-based immigrant classifications with a consistent standard.

Filing 30-1 at 1.

Three paragraphs of the agency's explanation of the background to this Policy Memorandum are particularly pertinent here:

> In 2010, the U.S. Court of Appeals for the Ninth Circuit (Ninth Circuit) reviewed the Administrative Appeals Office's (AAO) dismissal of a petitioner's appeal of a denial of a petition filed under 203(b)(1)(A) of the INA. *Kazarian v. USCIS,* 596 F.3d 1115 (9th Cir. 2010). Although affirming the decision, the Ninth Circuit found that the AAO erred in its evaluation of the initial evidence submitted with the petition pursuant to 8 CFR 204.5(h)(3). Specifically, the Ninth Circuit concluded that while USCIS may have raised legitimate concerns about the significance of the evidence submitted, those concerns should have been raised in a subsequent "final merits determination" of whether the petitioner has the requisite extraordinary ability. *Id.* at 1122. The Ninth Circuit further stated that the concerns were "not relevant to the antecedent procedural question of whether the petitioner has provided at least three types of evidence." *Id.* at 1121.

USCIS agrees with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of extraordinary ability: (1) Determine whether the petitioner or self-petitioner has submitted the required evidence that meets the parameters for each type of evidence listed at 8 CFR 204.5(h)(3); and (2) Determine whether the evidence submitted is sufficient to demonstrate that the beneficiary or self-petitioner meets the required high level of expertise for the extraordinary ability immigrant classification during a final merits determination. By contrast, the approach taken by USCIS officers in *Kazarian* collapsed these two parts and evaluated the evidence at the beginning stage of the adjudicative process, with each type of evidence being evaluated individually to determine whether the self-petitioner was extraordinary.

The two-part adjudicative approach to evaluating evidence described in *Kazarian* simplifies the adjudicative process by eliminating piecemeal consideration of extraordinary ability and shifting the analysis of overall extraordinary ability to the end of the adjudicative process when a determination on the entire petition is made (the final merits determination). Therefore, under this approach, an objective evaluation of the initial evidence listed at 8 CFR 204.5(h)(3) will continue as before; what changes is when the determination of extraordinary ability occurs in the adjudicative process. USCIS believes that this approach will lead to decisions that more clearly explain how evidence was considered, the basis for the overall determination of eligibility (or lack thereof), and greater consistency in decisions on petitions for aliens with extraordinary ability.

Filing 30-1 at 3.

The policy established by this Memorandum is the following:

In order to promote consistency in decision-making, USCIS officers should use a two-part approach for evaluating evidence submitted in support of all petitions filed for Aliens of Extraordinary Ability, Outstanding Professors or Researchers, and Aliens of Exceptional Ability. USCIS officers should first objectively evaluate each type of evidence submitted to determine if it meets the parameters applicable to that type of evidence described in the regulations (also referred to as "regulatory criteria"). USCIS officers then should consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for the immigrant classification.

Filing 30-1 at 4.

This Policy is then further illuminated in a part of the Memorandum captioned "Proof":

USCIS officers are reminded that the standard of proof for most administrative immigration proceedings, including petitions filed for Aliens of Extraordinary Ability, for Outstanding Professors or Researchers, and for Aliens of Exceptional Ability is the "preponderance of the evidence" standard. *See Matter of Chawathe,* 25 I&N Dec. 369 (AAO 2010). Thus, if the petitioner submits relevant, probative,

and credible evidence that leads USCIS to believe that the claim is "more likely than not" or "probably true," the petitioner has satisfied the standard of proof. Matter of E-M-, 20 I&N Dec. 77, 79-80 (Comm'r 1989); *see also U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place).

If a petitioner provides initial evidence (including but not limited to articles, publications, reference letters, expert testimony, support letters) that is probative (*e.g.,* does not merely recite the regulations) and credible, USCIS officers should objectively evaluate such initial evidence under a preponderance of the evidence standard to determine whether or not it is acceptable. In other words, USCIS officers may not unilaterally impose novel substantive or evidentiary requirements beyond those set forth in the regulations, but instead should evaluate the evidence to determine if it falls within the parameters of the regulations applicable to that type of evidence by a preponderance of the evidence standard. USCIS officers should then evaluate the evidence together when considering the petition in its entirety to determine if the petitioner has established by a preponderance of the evidence that the self-petitioner or beneficiary has the required high level of expertise for the immigrant classification.

Filing 30-1 at 4.

The *Kazarian* Policy Memorandum sets out the specific amendments to the *Adjudicator's Field Manual* pursuant to the Policy for each of the three classifications to which it applies. Filing 30-1 at 5–24. The amendments to the *Adjudicator's Field Manual* pertaining to aliens of extraordinary ability are set out on pages 5 through 14 of the Policy Memorandum. Filing 30-1 at 5–14. These amendments include the following note:

Part One Note: Objectively meeting the regulatory criteria [*i.e.*, the criteria in 8 C.F.R. § 204.5(h)(3)(i)–(x)] in part one alone does not establish that the alien in fact meets the requirements for classification as an Alien of Extraordinary Ability under section 203(b)(1)(A) of the INA.

Filing 30-1 at 13 (examples omitted). These amendments also include the following note about the second step in the analysis:

Part Two: Final Merits Determination. Meeting the minimum requirement of providing required initial evidence does not, in itself, establish that the alien in fact meets the requirements for classification as an alien of extraordinary ability under section 203(b)(1)(A) of the INA. As part of the final merits determination, the quality of the evidence also should be considered, such as whether the judging

responsibilities were internal and whether the scholarly articles (if inherent to the occupation) are cited by others in the field.

In Part Two of the analysis in each case, USCIS officers should evaluate the evidence together when considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, indicating that the alien is one of that small percentage who has risen to the very top of the field of endeavor.

If the USCIS officer determines that the petitioner has failed to demonstrate these requirements, the USCIS officer should not merely make general assertions regarding this failure. Rather, the USCIS officer must articulate the specific reasons as to why the USCIS officer concludes that the petitioner, by a preponderance of the evidence, has not demonstrated that the alien is an alien of extraordinary ability under section 203(b)(1)(A) of the INA.

Filing 30-1 at 13–14.

## B.  Count I of the Amended Complaint

In Count I of their Amended Complaint, Plaintiffs assert a claim titled, "Count I – Administrative Procedure Act." Filing 30 at 14. The first subheading in this Count states, "The *Kazarian* Policy Memorandum is the sub-regulatory adoption of a failed, proposed legislative rule in violation of the APA and [the] INA." Filing 30 at 14. Thus, the gravamen of this claim is that the APA and the INA were violated because the agency failed to adopt the *Kazarian* Policy when it was presented as a proposed legislative rule but then adopted it as a putative interpretive rule, general statement of policy, or rule of agency organization, procedure, or practice, without following the notice-and-comment requirement for a legislative rule. *See, e.g.,* Filing 30 at 14 (¶ 36) (distinguishing between an agency's "legislative" rules requiring notice-and-comment and other kinds of rules exempt from that requirement under the APA); Filing 30 at 18 (¶ 54) (alleging that the "final merits determination" step was *ultra vires* because an agency may not adopt by sub-regulatory policy without notice and comment a legislative rule that it failed to adopt by formal

rulemaking); Filing 30 at 19 (¶ 58) (alleging that the agency's proposed rule for a two-step analysis was never implemented it "cannot now be mandated to the field without notice and comment").

The claim begins with extensive allegations that the *Kazarian* Policy is a "legislative" rule. It then turns to equally extensive allegations that the agency tried but failed to enact the *Kazarian* two-step analysis properly, so that the agency could not subsequently impose the policy without notice and comment. These two parts of the claim require further description.

1. *Plaintiffs' Allegations that the* Kazarian *Policy Is a "Legislative" Rule*

The first paragraph of Count I realleges and incorporates by reference the prior allegations in the Amended Complaint, followed by several paragraphs that set out essentially a primer on promulgation of agency rules, regulations, and policies under the APA. *See* Filing 30 at 14–16 (consecutive ¶¶ numbered 50–53, 36–41).[2] The claim then turns to more specific allegations that the *Kazarian* Policy is a "legislative" rule.

Specifically, the claim alleges,

Defendant's adjudications of Plaintiffs' I-140, Immigrant Petition for Alien Worker show that the "final merits determination" is a rule applied in a binding manner and is a reversal of prior policy. The Defendant has unlawfully created a binding/legislative rule in violation of the APA and INA.

Filing 30 at 15 (¶ 38). The Court finds that the following four paragraphs of Count I summarize this section of Count I:

48.   USCIS used a Policy Memorandum to impose novel and additional requirements on immigrant visa applicants. Congress already defined the requirements of § 1152(b)(1)(A)(i) [sic] [meaning § 1153(b)(1)(A)(i)] for extraordinary ability immigrant visa classification, and the agency properly promulgated regulations setting forth initial evidence requirements in 8 C.F.R. § 204.5(h)(3) (stating that the initial evidence shall include a one-time achievement or at least three of the alternative evidentiary criteria). Further, the legal norm – the pre-*Kazarian* adjudication standard – was recognized, applied and upheld by the

_____

[2] The numbering of paragraphs in Count I of the Amended Complaint is not consecutive. Instead, it begins with paragraphs numbered 50 through 53, then re-uses paragraph numbers 36 through 50 (previously used in other sections of the Amended Complaint), then continues with paragraphs numbered 54 through 68. *See* Filing 30 at 14–28.

Defendant Agency as well as the federal courts. *See Buletini v. INS*, 860 F.Supp. at 1234.

49.     The *Kazarian* Policy Memorandum's "final merits determination" creates a "new . . . right" for the adjudicating officer to make an additional determination with regard to sustained acclaim beyond whether or not the threshold evidence has been submitted, thus it is a substantive rule. *SBC Inc. v. Federal Communications Com'n*, 414 F.3d at 497.

50.     The Defendant is not merely providing guidance with regard to extraordinary ability immigrant visa adjudications. Rather, the *Kazarian* Policy Memorandum reverses prior policy and substantively alters the requirements of 8 C.F.R. § 204.5(h) itself (which establish how a petitioner meets the first statutory requirement of sustained national or international acclaim). Therefore, the final merits determination is an improperly promulgated legislative rule.

54.[sic] Fundamentally, USCIS's implementation of the *Kazarian* policy imposing a vague and undefined "final merits determination" as an additional step in the extraordinary ability immigrant visa petition adjudication process was improperly adopted and thus *ultra vires* as the agency may not adopt a legislative rule by by [sic] sub-regulatory policy what it failed to accomplish [sic] by formal rulemaking without notice and comment.

Filing 30 at 17–18 (consecutive ¶¶ 48–54)).

> 2.     *Plaintiffs' Allegations that the* Kazarian *Two-Step Analysis Previously Failed Formal Rulemaking*

The second subheading in Count I is that "[t]he two-step analysis previously failed formal rulemaking." Filing 30 at 18 (unnumbered subheading). Specifically, this part of Count I alleges the following:

Four years **after** the publication of the current regulations, [8 C.F.R. § 204.5(h)], USCIS attempted and failed to implement a *Kazarian*-style two-step analysis in a proposed rule. Those changes, closely resembling USCIS's *Kazarian* policy guidance, were never implemented and cannot now be mandated to the field without notice and comment. . . .

Filing 30 at 19 (¶ 58) (emphasis in the original). In further support of the bar on the *Kazarian*-style two-step analysis owing to a prior "failed" attempt to implement it in formal rulemaking, the claim alleges the following:

58.     . . . Specifically, in the 1995 Proposed Rule on Employment-Based Immigrants, the predecessor agency to USCIS, legacy INS, attempted to clarify

9

alleged confusion concerning the evidentiary lists set forth in the regulations and to make the adjudicative process easier. 60 Fed. Reg. 29771 (Jun. 6, 1995).

> 59.    The preamble to the 1995 Proposed Rule stated:
>
>> The evidence listed is intended to be a guideline for the petitioner and the Service to determine extraordinary ability in order to make the adjudicative process easier for both the petitioner and the Service. The fact that an alien may meet three of the listed criteria does not necessarily mean that he or she meets the standard of extraordinary ability. The Service adjudicator must still determine whether the alien is one of that small percentage who have risen to the very top of his or her field of endeavor. Accordingly, the Service proposes to amend the regulations to state that meeting three of the evidentiary standards is not dispositive of whether the beneficiary is an alien of extraordinary ability. *Id*. at 29775.

Filing 30 at 19–20 (¶¶ 58–59). The claim alleges that "legacy INS" ultimately "withdrew" the proposed rule, purportedly "[a]s a result of widespread opposition," and has not tried to promulgate a similar rule since. Filing 30 at 20 (¶ 61). The claim also alleges that despite this prior failure at "proper rulemaking," Defendant "effected its desired substantive change to the adjudicative process via the December 22, 2010, internal policy memorandum [*i.e.*, the *Kazarian* Policy Memorandum]." Filing 30 at 20 (¶ 62).

In summary, the claim alleges,

> 64.    As such, USCIS cannot circumvent the formal rulemaking process required under the APA in order to provide so-called interpretive guidance to the field on a "final merits determination" second adjudicative step. USCIS issued the December 22, 2010 policy memorandum in violation of the APA because the memorandum is a substantive rule even though it is characterized as guidance to USCIS officers on how to analyze evidence submitted in support of a petition for extraordinary ability classification. Substantive changes to the regulatory framework and evidentiary standard for demonstrating eligibility for the extraordinary ability classification may only be accomplished through formal rulemaking and not through *ad hoc* case adjudication and agency guidance.

Filing 30 at 21 (¶ 64).

### 3.    *The Relief Sought on Count I*

Plaintiffs seek the following relief on Count I of the Amended Complaint:

10

68.   Plaintiffs respectfully request that this Court declare the *Kazarian* policy unlawful and enter an order enjoining Defendant from conducting an additional, vague and undefined "final merits determination" in the adjudication of "extraordinary ability" immigrant visa petitions, as well as order the Defendant to reopen and approve their petition, or, in the alternative, to remand their individual visa petition for reconsideration under the proper standard.

Filing 30 at 22 (¶ 68). Thus, Plaintiffs seek relief on behalf of all "extraordinary ability" visa petitioners by declaring the *Kazarian* Policy unlawful and enjoining its application to any "extraordinary ability" visa petitions, as well as relief related to their individual I-140 petition for an "extraordinary ability" visa for Rachana Kumar.

## II.  LEGAL ANALYSIS

Defendant makes a two-pronged attack on Plaintiffs' claim in Count I of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, involving both Plaintiffs' failure to state a claim on the merits and the untimeliness of Plaintiffs' assertion of the claim. Defendant originally asserted that the challenge based on untimeliness of the claim in Count I warranted dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rule of Civil Procedure. Filing 32 at 2. However, in a Reply in further support of the Motion to Dismiss, Defendant acknowledges that the deadline under the applicable statute, 28 U.S.C. § 2401(a), is no longer considered jurisdictional and is subject to equitable tolling, so that this challenge is also one for failure to state a claim pursuant to Rule 12(b)(6). Filing 41 at 2. The Court will consider Defendant's two challenges in turn, but it will first summarize the Rule 12(b)(6) standards applicable to those challenges.

### A.  Rule 12(b)(6) Standards for Dismissal

The typical ground for a Rule 12(b)(6) motion is the insufficiency of the factual allegations offered to state claims. As the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory [factual] allegations,

11

accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680–83 (2009)). Thus, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). While Defendant's challenge to the untimeliness of Count I might turn at least in part on the sufficiency of factual allegations, Defendant's challenge to the legal merit of Count I does not.

Rule 12(b)(6) also permits dismissal when a claim is not cognizable under applicable law. *See, e.g.*, *Couzens v. Donohue*, 854 F.3d 508, 517 (8th Cir. 2017) (dismissal was appropriate where Missouri did not recognize a claim for false light invasion of privacy); *Thomas v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3081, 2022 WL 1491102, at *18 (D. Neb. May 11, 2022) (agreeing with the defendant that the plaintiffs had failed to state a claim because a disparate-impact claim is not cognizable under the Equal Protection Clause); *Freeney v. Galvin*, No. 8:19CV557, 2020 WL 229996, at *2 (D. Neb. Jan. 15, 2020) (finding the plaintiff failed to state a § 1983 claim against the manager of his private place of employment because such a claim is not cognizable where a private person is not a state actor or engaged in joint action with the state or its agents). In such cases, the plaintiff failed to state a claim that was legally cognizable as opposed to factually plausible. This ground for dismissal also is not an ideal fit with the Defendant's assertion that Count I lacks legal merit, where the legal theory of violations of the APA and the INA is legally cognizable, even if Defendant is correct that Plaintiffs' premise that there was a violation is wrong as a matter of law.

Yet, prior to the fixation on pleading of a plausible factual basis for a claim ushered in by *Iqbal* and its progeny, the Eighth Circuit Court of Appeals recognized that dismissal pursuant to

Rule 12(b)(6) was appropriate "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)). Thus, for example, where a fraud claim alleged only "immaterial misrepresentations," the claim presented an "insuperable bar" to relief. *Parnes,* 122 F.3d at 546. It would seem to this Court that a claim of violation of the APA or the INA that is contrary to law—that is, one that is premised on conduct that is not a violation of the law at all—likewise faces an "insuperable bar" on its face to any relief. Thus, it should be subject to dismissal pursuant to Rule 12(b)(6). *Cf. Benton,* 524 F.3d at 870; *Parnes,* 122 F.3d at 546. Indeed, the Eighth Circuit Court of Appeals has recognized that the issue of whether or not an agency rule is "legislative" is primarily a question of law. *See Iowa League of Cities v. EPA*, 711 F.3d 844, 867 (8th Cir. 2013) (agreeing with other courts that "whether a Guidance Document is a legislative rule is largely a legal, not a factual, question, turning primarily upon the text of the Document" (citation omitted)). The Court does not find anything in *Iqbal* or its progeny to the contrary. In this case, Defendant contends that the *Kazarian* Policy was not implemented in violation of the APA, contrary to the premise of Plaintiffs' claim in Count I. If Defendant is correct, then the Court concludes that dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted would be appropriate.

### B.  The Defendant's Untimeliness Challenge to Count I

Although Defendant's assertion that the claim in Count I is untimely is the second prong of Defendant's attack, the Court will consider it first. The parties agree or at least assume that the six-year statute of limitations in 28 U.S.C. § 2401(a) is applicable to Plaintiffs' claim in Count I. They disagree about whether the claim is time-barred under that statute of limitations.

*1.      The Parties' Arguments*

Defendant argues that Plaintiffs' claim in Count I is six years too late under the applicable statute of limitations in 28 U.S.C. § 2401(a), because the time ran from December 22, 2010, when the policy was issued, but Plaintiffs did not assert this claim until they filed their Amended Complaint on January 6, 2023. Filing 32 at 11.[3] Plaintiffs respond that it is not clear when a claim based on an unpublished policy begins to run, but they argue it should not run until an aggrieved person knows or has reason to know that he or she has suffered a legal wrong because of the challenged agency action. Filing 38 at 8–9. They contend that any other interpretation is "outrageous" and "unjust." Filing 38 at 9. They also contend that, because § 2401(a) is a claims processing rule, it is subject to equitable tolling, "which surely would apply . . . here." Filing 38 at 9–10. In reply, Defendant argues that Plaintiffs' challenge relates to all I-140 visa applicants so that it is a facial challenge not merely an as-applied challenge to the denial of their visa petition, which means that the limitations period for that claim ran from the adoption of the policy. Filing 41 at 2, 5–6. Defendant also contends that Plaintiffs have not alleged any basis for equitable tolling. Filing 41 at 2, 8.

*2.      The Claim in Count I Is Untimely Under 28 U.S.C. § 2401(a)*

a.      Controlling Law Distinguishes Between "Facial" and "As-Applied" Challenges Under 28 U.S.C. § 2401(a)

Although Plaintiffs rely on *Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016), Filing 38 at 8, the Court finds the controlling standard on the application of the pertinent statute of limitations is set out in *N. Dakota Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*, 55 F.4th 634 (8th Cir. 2022). As the Eighth Circuit Court of Appeals explained in that case, "Claims arising

---

[3] Plaintiffs' two claims of violations of the APA in their Original Complaint are different from Count I of the Amended Complaint. *See* Filing 1.

under the APA are subject to a six-year statute of limitations." *N. Dakota Retail Ass'n*, 55 F.4th at 639 (citing 5 U.S.C. § 704 and 28 U.S.C. § 2401(a), where § 2401(a) states, "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

The Eighth Circuit then addressed the question of "whether a plaintiff which comes into existence more than six years after the publication of a final agency action is barred from bringing an APA facial challenge to the agency action." *Id.* The Eighth Circuit observed, "Assessing the time of accrual of rights of action, other circuits distinguish between as-applied and facial challenges under the APA." *Id.* at 640. It explained that those courts hold that a right of action for facial challenges to final agency action accrues upon publication of the regulation, not when plaintiffs later become subject to the regulation and suffer injury. *Id.* at 640–41 (citing cases). On the other hand, the Eighth Circuit cited *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991), as acknowledging that ""[i]f, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." *N. Dakota Retail Ass'n*, 55 F.4th at 641 (quoting *Wind River Mining*, 946 F.2d at 715).[4]

In *North Dakota Retail Association*, the Eighth Circuit Court of Appeals settled the rule in this circuit for facial challenges:

> This court concludes that, when plaintiffs bring a facial challenge to a final agency action, the right of action accrues, and the limitations period begins to run, upon publication of the regulation. This comports with this court's precedent. For

---

[4] The decision of the Ninth Circuit Court of Appeals in *Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016), on which Plaintiffs rely, also relied on *Wind River Mining* for the proposition that "[p]rocedural challenges to agency rules under the Administrative Procedure Act are subject to the general six-year limitations period in the U.S. Code." *Prez-Guzman*, 835 F.3d at 1077 (citing *Wind River Mining*, 946 F.2d at 713–14). The Ninth Circuit also relied on *Wind River Mining* for the proposition that the government's interest in finality and repose outweighs a late-comer's desire to assert a facial challenge to a regulation. *Id.* at 1078 (citing *Wind River Mining*, 946 F.2d at 715).

> facial challenges, liability is fixed and plaintiffs have a complete and present cause
> of action upon publication of the final agency action.

*N. Dakota Retail Ass'n*, 55 F.4th at 641 (citations omitted). The Eighth Circuit held that where the

plaintiff sought to invalidate the text of the regulation in all applications, its challenge was facial.

*Id.* Where that challenge came six years after the rule was published, it was untimely. *Id.*

The Eighth Circuit then explained that a plaintiff with an untimely facial challenge may

have a remedy to escape the statute of limitations if that party can establish that he or she is eligible

for equitable tolling. *Id.* at 641. The Eighth Circuit held that, contrary to its prior treatment of

§ 2401(a) as a jurisdictional bar not subject to equitable tolling, "§ 2401(a) is not a jurisdictional

bar." *Id.* at 642. To establish eligibility for equitable tolling, a plaintiff must show "(1) that he [or

she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances

stood in his [or her] way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S.

631, 649 (2010)). The Eighth Circuit found that two of the plaintiffs before it had notice of the

publication of the regulation but did not sue the agency until ten years later. *Id.* It found that the

third plaintiff had not explained its three-year delay between incorporation and filing of its lawsuit

against the agency. *Id.* at 642–43. Because of these delays, the Eighth Circuit held that the plaintiffs

had failed to show that they had been pursuing their rights diligently. *Id.* at 643. Consequently,

they were not eligible for equitable tolling, and their facial challenge to the regulation was time-

barred. *Id.*

### b. Plaintiffs' Claim in Count I Is a Time-Barred "Facial" Challenge

Plaintiffs suggest that the lack of publication of the *Kazarian* Policy for purposes of notice

and comment muddies the application of § 2401(a). *See* Filing 38 at 7. The statute itself says only

that the time runs "six years after the right of action first accrues." 28 U.S.C. § 2401(a). In *North*

*Dakota Retail Association*, the Eighth Circuit identified the date of accrual as the date of

publication of the final agency action. 55 F.4th at 639. This Court concludes here that, as a matter of law, the final agency action at issue in Count I, based on the nature of that claim, was the date of the *Kazarian* Policy Memorandum, December 22, 2010, because that is when the Policy was issued to USCIS adjudicators. *Cf. id.* Thus, that is the date when a facial challenge to the *Kazarian* Policy accrued.

Applying the standards set out above in this case, it is clear that the gravamen of Count I is a facial challenge to the promulgation of the *Kazarian* Policy, which is consequently time-barred more than six years after the Policy was promulgated. *Id.* at 643. As the Court pointed out above, the gravamen of the claim in Count I is that USCIS violated the APA and the INA because the agency failed to adopt the *Kazarian P*olicy in 1995 when it was presented as a proposed legislative rule but then adopted it in 2010 as a policy purportedly exempt from the notice-and-comment requirement, which should bar the policy. *See, e.g.,* Filing 30 at 21 (¶ 64) ("As such, USCIS cannot circumvent the formal rulemaking process required under the APA in order to provide so-called interpretive guidance to the field on a 'final merits determination' second adjudicative step."). Furthermore, the relief sought on this claim is in the first instance a declaration that the *Kazarian* Policy is unlawful and an order "enjoining Defendant from conducting an additional, vague and undefined 'final merits determination' in the adjudication of 'extraordinary ability' immigrant visa petitions." Filing 30 at 22 (¶ 68). This is the essence of a facial challenge because it seeks to invalidate the text of the regulation in all applications. *N. Dakota Retail Ass'n*, 55 F.4th at 641.

Plaintiffs also seek individual relief consisting of "order[ing] the Defendant to reopen and approve their petition, or, in the alternative, to remand their individual visa petition for reconsideration under the proper standard." Filing 30 at 22 (¶ 68). Nevertheless, Plaintiffs cannot convincingly argue that they are making a timely individual "as-applied challenge" to the agency's decision on the ground that it exceeds constitutional or statutory authority. *See, e.g., Wind River*

*Mining*, 946 F.2d at 715. Although Plaintiffs state numerous allegations that the *Kazarian* Policy is contrary to provisions of the APA, the statutory authority in question for a statutory challenge is not the APA, but the underlying statute. *See, e.g., Perez-Guzman*, 835 F.3d at 1077 (agreeing with the parties that a challenge to a decision based on an unreasonable interpretation of § 1158 and § 1231(a)(5) was "substantive," *i.e.*, as applied). In this case, the underlying substantive statute granting the relevant authority is the INA, not the APA. Plaintiffs have made only conclusory allegations in their Amended Complaint that the *Kazarian* Policy violates the INA. Filing 30 at 14 (first subheading to Count I). Such conclusory allegations are insufficient to state a claim. *See Richardson v. BNSF Ry. Co*., 2 F.4th 1063, 1068 (8th Cir. 2021) ("Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." (internal quotation marks and citations omitted)). Allegations that the *Kazarian* Policy imposes requirements that are different from those imposed by a properly promulgated regulation, 8 C.F.R. § 204.5(h), in violation of APA procedural requirements, cannot reasonably or plausibly be construed to allege a violation of the underlying INA.

The Court is also unpersuaded by Plaintiffs' contention that the deadline for their claim in Count I should now be equitably tolled because they had no standing to sue prior to suffering an injury in fact outside the limitations period. Filing 38 at 9–10. In *Perez-Guzman*, on which Plaintiffs relied, the Ninth Circuit Court of Appeals recognized this exact possibility, but it held that the value of repose outweighed this concern. 835 F.3d at 1078; *see also Wind River Mining*, 946 F.2d at 715. This Court agrees. *See, e.g., California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 582 U.S. 497, 505 (2017) ("[S]tatutes of repose are enacted to give more explicit and certain protection to defendants. These statutes 'effect a legislative judgment that a defendant should be

free from liability after the legislatively determined period of time.'" (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)).

Furthermore, there are no factual allegations in the Amended Complaint plausibly supporting all requirements of equitable tolling. *See, e.g., N. Dakota Retail Ass'n,* 55 F.4th at 642 ("A plaintiff is entitled to equitable tolling only by showing (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances stood in his [or her] way and prevented timely filing." (internal quotation marks and citations omitted); *see also Far E. Aluminium Works Co., 27* F.4th at 1364 (*explaining the plausible factual basis requirement to defeat a Rule 12(b)(6) motion). Plaintiffs were aware of the *Kazarian Po*licy from at least September 2, 2021, when plaintiff Etsy, Inc., filed a petition seeking to classify its employee plaintiff Kumar as an "alien of extraordinary ability" for purposes of an immigrant visa petition. Filing 30 at 5 (¶ 15) (alleging the date of the application). Certainly, Plaintiffs had notice of the K*azarian P*olicy no later than December 8, 2021, when USCIS issued its initial decision denying their petition, expressly explaining the two-step analysis. Filing 30-3 at 2. In that decision, the adjudicator explained,

> If the beneficiary received a one-time achievement (a major, internationally recognized award) or meets at least three criteria, USCIS will then consider the evidence in the context of a final merits determination. However, the fact that the beneficiary meets the minimum requirement of providing required initial evidence does not, in itself, establish that the beneficiary is one of the small percentage who have risen to the very top of the field of endeavor and that the beneficiary has sustained national or international acclaim in the field. *See Kazarian v. USCIS*, 2010 WL 725317 (9th Cir. March 4, 2010).

Filing 30-3 at 2. Nevertheless, Plaintiffs waited to assert their facial challenge to the *Kazarian* Policy in Count I until the filing of their Amended Complaint in this matter on January 6, 2023. They offer no explanation of why such a facial challenge could not have been asserted nearly a year earlier in their original Complaint filed on February 16, 2022. Filing 1.

Thus, Defendant's Motion to Dismiss as to Count I is granted on the ground that the claim is untimely.

### C. Lack of Legal Merit

The Court will also consider Defendant's argument for dismissal of Count I for lack of legal merit in addition or in the alternative to Defendant's untimeliness challenge to that claim. This course is appropriate because even assuming for the sake of argument that the claim is timely it must be dismissed for lack of legal merit.

#### 1.    Summary of the Parties' Arguments

In support of the "legal merit" prong of her challenge, Defendant argues that the *Kazarian* approach is lawful and widely accepted. Filing 32 at 8. Defendant cites two cases as demonstrating that the *Kazaria*n Policy is not an improperly promulgated rule or policy. *Se*e Filing 32 at 1. The first is the decision of the Fifth Circuit Court of Appeals *in Amin v. Mayorka*s, 24 F.4th 383 (5th Cir. 2022*)*, and the second is the decision of Senior Judge Kopf of this Court in *Biyani v. United States Citizenship & Immigration Services*, No. 4:22CV3032, 2022 WL 17326211 (D. Neb. Nov. 29, 2022). Although *Amin* and *Biyani* clearly provide useful guidance, neither decision is controlling. *See, e.g., Iverson v. United States*, 973 F.3d 843, 847 (8th Cir. 2020) (explaining that decisions from other Circuit Courts of Appeals "provide persuasive authority only" (citing *Jaben v. United States*, 333 F.2d 535, 538 (8th Cir. 1964)); *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 865–66 (8th Cir. 2021) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting *Camreta v. Greene*, 563 U.S. 692, 730 n.7 (2011)). Consequently, those decisions standing alone are not sufficient for the Court to hold that Plaintiffs' claim in Count I has no legal merit. Instead, the Court must make its own examination of the requirements for agency rulemaking and its own determination of the validity of the *Kazarian*

Policy. That said, the Court will take note where appropriate of the reasoning of other courts on the same or similar issues.

Plaintiffs make four more or less distinct challenges to the *Kazarian* Policy: (1) that the genesis of the Policy is mere dicta in the Ninth Circuit's decision in *Kazarian*; (2) that the *Kazarian* Policy failed or was previously rejected during formal rulemaking so it cannot be adopted without notice and comment; (3) that the *Kazarian* Policy is contrary to congressional intent expressed in the statute and contrary to the regulation it modifies; and (4) that the *Kazarian* Policy was a "legislative" rule that was improperly adopted without complying with notice-and-comment requirements. Filing 38 at 6–19. The Court finds it appropriate to consider in turn these challenges, including the specific supporting and contrary arguments.

> 2.   *Plaintiffs' Arguments that the Kazarian Policy Is Born of Dicta and "Failed" Formal Rulemaking Fail*

The Court concludes that Plaintiffs' first two arguments for the alleged invalidity of the *Kazarian* Policy fail.

> a.   *Kazarian*'s Discussion of the Regulation Is Not Irrelevant Simply because It Is Dicta where It Is Well-Supported

A contention in Plaintiffs' arguments is that the agency relied on a few sentences of judicial dicta from the *Kazarian* decision to craft a new "final merits determination" requirement for extraordinary ability visa determinations. *See* Filing 38 at 1, 4, 12. They argue that these sentences are dicta because the Ninth Circuit Court of Appeals ultimately held in *Kazarian* that the appellant had met only two of three alternative evidentiary requirements or regulatory criteria under 8 C.F.R. § 204.5(h)(3). Filing 38 at 12.

What the agency said in issuing the *Kazarian* Policy was not that it was relying on *Kazarian* as a controlling statement, but that the agency "agrees with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of

extraordinary ability." Filing 30-1 at 3. Plaintiffs have not cited and the Court has not found any authority suggesting that a judicial characterization of the proper analysis under statutory or regulatory language—particularly if it is well-reasoned or well-supported—is necessarily irrelevant or unpersuasive merely because it is set out in dicta.

Plaintiffs' characterization of the *Kazarian* Policy as arising from just two sentences in the Ninth Circuit's decision, Filing 38 at 1, is misleading. Rather, in *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010), the Ninth Circuit provided a comprehensive discussion of the statutory and regulatory requirements for an extraordinary ability visa, including distinguishing those requirements from the requirements for an "exceptional ability" visa. *See* 596 F.3d at 1119–21. The Ninth Circuit began with the statutory authorization for an extraordinary ability visa in 8 U.S.C. § 1153(b)(1)(A), then walked through the pertinent regulation, 8 C.F.R. § 204.5(h), to determine its requirements. *Id.* at 1119–20. The Ninth Circuit recognized that § 204.5(h)(3) sets out two alternatives for proof of extraordinary ability: (1) "evidence of a one-time achievement (that is, a major, international recognized award)," and (2) "evidence of at least three" of the ten listed achievements or regulatory criteria. *Id.* at 1119. Then, pointing directly to language of the regulation and the statute, the Ninth Circuit explained,

> If a petitioner has submitted the requisite evidence, USCIS determines whether the evidence demonstrates both a "level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and "that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). Only aliens whose achievements have garnered "sustained national or international acclaim" are eligible for an "extraordinary ability" visa. 8 U.S.C. § 1153(b)(1)(A)(i).

*Kazarian*, 596 F.3d at 1119-20. This well-supported description of the requirements of the statute and the regulation is indeed persuasive, so that the agency's agreement with it is hardly surprising. Moreover, such a discussion was of particular significance at the time when, as the Ninth Circuit

22

recognized, "[i]nterpretation of the statutory and regulatory requirements for the 'extraordinary ability' visa present[ed] a question of first impression for this court," and what "scant caselaw" existed indicated only "that the regulations regarding this preference classification are extremely restrictive." *Kazarian*, 596 F.3d at 1120 (cleaned up and citations omitted).

In short, the *Kazarian* Policy is not invalid simply because it is consistent with or even based on dicta in the Ninth Circuit's *Kazarian* decision.

### b. The *Kazarian* Policy Did Not "Fail" Formal Rulemaking and It Is Not the Result of Executive Overreach

Plaintiffs also argue that the *Kazarian* Policy failed or was previously rejected during formal rulemaking so it cannot be adopted without notice and comment. Filing 38 at 7. Indeed, they contend that no court has thus far considered this contention, which casts doubt on the conclusions of other courts upholding the Policy and means that their challenge raises an issue of first impression. Filing 38 at 7, 11. Plaintiffs describe this bypassing of formal rulemaking as "executive overreach." Filing 38 at 11, 13. They point out that neither *Amin* nor *Biyani* addresses this important issue. Filing 38 at 11.

Defendant argues that Plaintiffs cite no legal authority supporting their contention that because the *Kazarian* Policy purportedly failed to be adopted through a notice-and-comment procedure in the 1990s, the agency is bound to implement any such policy—including as an interpretive rule—only through notice-and-comment procedures. Filing 41 at 3. Defendant points out that when the agency withdrew the proposed rule requiring a two-step analysis of "extraordinary ability" petitions it did so when withdrawing the entire proposed rule encompassing much more than adoption of that analysis. Filing 41 at 3. Defendant argues that in these circumstances describing the *Kazarian* Policy as having previously "failed" proper rulemaking is inaccurate or misleading. Filing 41 at 3.

23

Plaintiffs cite nothing in their opposition brief to support their contention that the *Kazarian* Policy "failed" formal rulemaking in 1995. *See* <u>Filing 38 at 7</u>. Similarly, they pleaded no factual basis for their allegation in their Amended Complaint that "[a]s a result of widespread opposition, legacy INS ultimately withdrew the proposed rule." <u>Filing 30 at 20</u> (¶ 61). In contrast, Defendant has pointed to evidence demonstrating that the agency simply withdrew the proposed rule with an entire package of amendments to the regulations. *See* <u>Filing 41 at 3</u>. That evidence is that the rule changes proposed in 1995 were withdrawn because "the Service has discovered certain provisions in the regulations that need clarification or revision" and because "[t]he Service also needs to incorporate certain changes made by the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 into the regulations." View Rule, Office of Information and Regulatory Affairs.[5] Nor have Plaintiffs cited any standards for invalidating an administrative rule based on "executive overreach," except to the extent that a "legislative" rule was improperly adopted without adhering to the notice-and-comment requirements of the APA, which is discussed below. Plaintiffs have not cited—and the Court has not found—that initially offering a rule in a package submitted for notice and comment is a concession by the agency that the rule necessarily is "legislative" and requires notice and comment or estops the agency from adopting the rule without adhering to notice-and-comment procedures if the agency determines that the rule is not subject to such procedures.

In short, the real and potentially dispositive issues are whether the *Kazarian* Policy is contrary to the governing statute and the preexisting regulation and whether it is a "legislative" rule improperly promulgated without adhering to notice-and-comment procedures. The Court will consider those issues below.

---

[5] *See* https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=200104&RIN=1115-AD55.

    3.    *Plaintiffs' Argument that the Kazarian Policy Is Contrary to Congressional Intent and the Agency's Preexisting "Legislative" Rule Is Unpersuasive*

    a.  The Parties' Arguments

Plaintiffs argue that the *Kazarian* Policy is invalid and that the courts holding otherwise are wrong because the Policy is unsupported by congressional intent where the two-step analysis is not in the statute, 8 U.S.C. § 1153(b)(1)(A). Filing 38 at 7. They dispute the Fifth Circuit's decision in *Amin* upholding the *Kazarian* Policy because they argue that the Fifth Circuit's construction of the INA and its accompanying regulations effectively uses the *Kazarian* "final merits determination" to alter the standard of proof above the legally prescribed preponderance of the evidence. Filing 38 at 14. They assert that the *Kazarian* policy substitutes an "amorphous" new standard for determining whether an individual is in "that small percentage who have risen to the very top of the[ir] field of endeavor" as "extraordinary ability" is defined in 8 C.F.R. § 204.5(h)(2). Filing 38 at 14. The Plaintiffs argue that the analysis of another judge of this Court in *Biyani* simply accepted the Fifth Circuit's allegedly flawed analysis in *Amin*. Filing 38 at 15.

Defendant points out that in *Amin* and *Biyani* the courts found nothing wrong in the *Kazarian* Policy and expressly held that the Policy is not in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, nor was it implemented without observing proper procedures. Filing 41 at 4. Defendant contends that there is also no case law supporting Plaintiffs' argument that the *Kazarian* Policy alters the burden of proof employed by USCIS in the adjudication of the extraordinary ability visa petitions. Filing 41 at 4. Specifically, Defendant argues that there is no support for the argument that USCIS is not permitted to evaluate the evidence as a whole to determine whether the petitioner is an alien of extraordinary ability. Filing 41 at 4.

b.   Standards for Setting Aside *Ultra Vires* Agency Rules

A court may set aside agency action under the APA if *inter alia* it is "'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Northport Health Servs. of Arkansas, LLC v. U.S. Dep't of Health & Hum. Servs.*, 14 F.4th 856, 866 (8th Cir. 2021) (quoting 5 U.S.C. § 706(2)(C)), *cert. denied sub nom. Northport Health Servs. of Arkansas, LLC v. Dep't of Health & Hum. Servs.*, 143 S. Ct. 294 (2022). In particular, § 706(2)(C) of the APA "authorizes courts to strike down as ultra vires agency rules promulgated without valid statutory authority." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 876 (8th Cir. 2013). "Agency rules will survive ultra vires allegations so long as [the court] can 'reasonably conclude that the grants of authority in the statutory provisions cited by the government contemplate the issuance.'" *Id.* at 877 (quoting *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998)). To put it another way, an agency rule must not be "manifestly contrary to the statute." *Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 952 (8th Cir. 2018) (quoting *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 52-53 (2011)). A rule is also invalid if it is a plainly erroneous interpretation of the agency's own regulation or inconsistent with the agency's own regulation. *El Dorado Chem. Co. v. U.S. E.P.A.*, 763 F.3d 950, 958 (8th Cir. 2014).

c.   The *Kazarian* Policy Is Not *Ultra Vires*

Contrary to Plaintiffs' contentions, the Court finds as a matter of law that the *Kazarian* Policy is consistent—not inconsistent—with 8 U.S.C. § 1153(b)(1)(A) and the agency's preexisting legislative rule in 8 C.F.R. § 204.5(h). The part of the statute to which the *Kazarian* Policy pertains states,

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation[.]

8 U.S.C. § 1153(b)(1)(A)(i). Plaintiffs never challenge 8 C.F.R. § 204.5(h) on the ground that it is improperly promulgated under the statute.

As the Fifth Circuit Court of Appeals explained in *Amin*,

The agency's reading [in the *Kazarian* Policy] is consistent with the governing statute and the regulation. The regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa. It addresses what evidence must "accompany[ ]" a petition. 8 C.F.R. § 204.5(h)(3). As most college applicants learn, submitting all the required application materials does not guarantee a favorable decision. What is more, the regulation labels the categories "*Initial* evidence" and states that applicants must submit evidence of "*at least* three" criteria. *Id.* (emphasis added). This word choice contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more? As we read it, the regulation's "initial evidence" provision provides color to the statute's "extensive documentation" requirement. *See* 8 U.S.C. § 1153(b)(1)(A). And the final merits determination speaks to the statute's requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim." *Id.* Amin's view is unmoored from the statute in not requiring an applicant to prove that essential requirement.

*Amin*, 24 F.4th at 391–92.

The Court agrees with the Fifth Circuit's analysis in *Amin*. However, this Court would also put the matter slightly differently by focusing directly on the relationship between the *Kazarian* Policy and the statute and between the Policy and the preexisting regulation. *Iowa League of Cities*, 711 F.3d at 877 ("Agency rules will survive ultra vires allegations so long as we can reasonably conclude that the grants of authority in the statutory provisions cited by the government contemplate the issuance." (internal quotation marks and citation omitted)); *El Dorado Chem. Co.*, 763 F.3d at 958 (explaining that a rule is invalid if it is a plainly erroneous interpretation of the agency's own regulation or inconsistent with the regulation). This Court observes that the first step under the *Kazarian* Policy—considering the evidence of achievements—corresponds to the statutory requirement of "extensive documentation" in 8 U.S.C. § 1153(b)(1)(A)(i). It also corresponds to the express regulatory criteria in 8 C.F.R. § 204.5(h)(3). The second step under that

Policy—making a final merits determination—corresponds to determination on the essential statutory requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim" in 8 U.S.C. § 1153(b)(1)(A)(i). It also corresponds to the determination on the regulatory definition of "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor" in 8 C.F.R. § 204.5(h)(2).

Under these circumstances, the *Kazarian* Policy survives Plaintiffs' allegation that it is *ultra vires* because this Court "can 'reasonably conclude that the grants of authority in the statutory provisions cited by the government contemplate the issuance.'" *Iowa League of Cities*, 711 F.3d at 877 (quoting *O'Keefe*, 132 F.3d at 1257). The *Kazarian* Policy is not "manifestly contrary to the statute," *Thompson Truck & Trailer, Inc.*, 901 F.3d at 952, nor is it a plainly erroneous interpretation of the agency's own regulation or inconsistent with the regulation. *El Dorado Chem. Co.*, 763 F.3d at 958.

Plaintiffs nevertheless argue that the *Kazarian* Policy is *ultra vires* because it alters the standard of proof above the legally prescribed preponderance of the evidence by substituting an "amorphous" new standard in the form of a "final merits determination." Filing 38 at 14. They assert that prior to the adoption of th*e Kazari*an Policy, if an alien satisfied the evidentiary burden set forth in 8 C.F.R. § 204.5(h)(3), the "the alien must be deemed to have extraordinary ability unless the [legacy] INA sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard." Filing 38 at 5–6 (quoting *Buletini v. v. INS*, 860 F. Supp. 1224, 1234 (E.D. Mich. 1994)). Plaintiffs' assertion that the *Kazarian* Policy departs from the pre-Policy standards is not persuasive.

First, an out-of-circuit district court decision is a remarkably slender rod to support the proposition that it states the pre-Policy analysis by both the USCIS and the courts. *See Amin*, 24

F.4th at 391 n.5 (rejecting a claim that USCIS uniformly followed *Buletini* prior to issuing the *Kazarian* Policy where the plaintiff cited only a 1993 letter from a former INS Acting Assistant Commissioner for Examinations and an Illinois district court case noting the agency's failure to explain why an applicant's evidence did not meet the extraordinary ability standard). Also, as in *Amin*, Plaintiffs here do not contend and cite no evidence that USCIS ever promulgated a rule or adopted a uniform policy embracing *Buletini*. *Amin*, 24 F.4th at 391 n.4.

In this Court's view, what is still more telling is that it is not at all clear that the statement of the standard in *Buletini* is inconsistent with the *Kazarian* Policy's two-step analysis. The *Buletini* decision plainly contemplated that, as a first step, the agency would consider whether an alien satisfied the evidentiary burden set forth in 8 C.F.R. § 204.5(h)(3). *Buletini*, 860 F. Supp. at 1234 ("Once it is established that the alien's evidence is sufficient to meet three of the criteria listed in 8 C.F.R. § 204.5(h)(3), the alien must be deemed to have extraordinary ability. . . ."). It likewise contemplated a second step evaluation by the agency, set out in the clause beginning "unless" in which the agency could determine, based on specific and substantiated reasons, that the alien does not meet the extraordinary ability standard, despite meeting the evidentiary burden on the regulatory criteria. *Id.* (stating that an alien who meets the evidentiary burden on the regulatory criteria "must be deemed to have extraordinary ability unless the INS sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard").

Nor can the Court conclude that the *Kazarian* Policy imposes a burden of proof other than preponderance of the evidence, as Plaintiffs seem to suggest. Filing 38 at 6 (suggesting that the *Kazarian* Policy changed the burden of proof, but the standard of proof under the statute and the regulation "was and has remained at all times a preponderance of the evidence, the burden of which lies with the petitioner"). As quoted above in § I.A.2., the explanation of "Proof" in the *Kazarian*

Policy Memorandum expressly reiterates the "preponderance of the evidence" burden for both steps of the analysis. Filing 30-1 at 4. So too does the note on application of the second step. Filing 30-1 at 13–14.

Thus, as a matter of law, the *Kazarian* Policy is not *ultra vires*.

### 4.    The Kazarian Policy Is Procedurally Sound

The Court turns at last to what is the most significant of Plaintiffs' challenges to the *Kazarian* Policy, an allegation that the Policy is a "legislative" rule that requires notice and comment to be properly adopted. Filing 38 at 7. Defendant contends this challenge is without legal merit so it must be dismissed. Filing 41 at 1.

#### a.   The Parties' Arguments

Plaintiffs contend that the *Kazarian* Policy is a "legislative" rule because that Policy effects a substantive change in existing law or policy. Filing 38 at 18. In support, Plaintiffs point to evidence from a news article that the approval rate for individual immigrants seeking "extraordinary ability" visas fell dramatically from 2016 to 2018 and again in 2019. Filing 38 at 18. They argue, "Discovery is needed to determine the approval rates from FY 2010 (the last year pre-*Kazarian* policy) through the present in order to gauge the impact of the *Kazarian* policy across administrations, making the legislative nature of this policy a question of fact not appropriate for partial summary judgment." Filing 38 at 19.[6] Finally, Plaintiffs argue that because USCIS adjudicators are required to apply and applicants are required to satisfy a new second step "final merits determination" under the *Kazarian* Policy, the *Kazarian* Policy is binding and consequently "legislative" in nature. Filing 38 at 19. Defendants argue that the issue of whether or not the

---

[6] Plaintiffs argue that the question is "not appropriate for partial summary judgment," notwithstanding that the current procedural footing is on a Motion to Dismiss.

*Kazarian* Policy is a "legislative" rule has been "squarely and correctly" decided by the Fifth

Circuit in *Amin* and this Court in *Biyani*. Filing 41 at 1.

        b.  Procedural Requirements for Agency Rules

An agency rule may be invalidated on procedural grounds as well as for exceeding

authority. *Northport Health Servs. of Arkansas, LLC*, 14 F.4th at 866 (explaining that a court may

set aside agency action under the APA if inter alia it is "'without observance of procedure required

by law'" (quoting 5 U.S.C. § 706(2)(D))); *Children's Health Care v. Centers for Medicare &*

*Medicaid Servs.*, 900 F.3d 1022, 1025 (8th Cir. 2018) (same). As the Eighth Circuit Court of

Appeals has explained, "Under 5 U.S.C. § 553(b) and (c), '[a]gencies must conduct "rule making"

in accord with the [Administrative Procedure Act's] notice and comment procedures.'" *Children's*

*Health Care*, 900 F.3d at 1025 (quoting *Iowa League of Cities v. EPA*, 711 F.3d 844, 855 (8th Cir.

2013)).

> The United States Supreme Court has explained,
>
> Not all "rules" must be issued through the notice-and-comment process. Section
> 4(b)(A) of the APA provides that, unless another statute states otherwise, the
> notice-and-comment requirement "does not apply" to "interpretative rules, general
> statements of policy, or rules of agency organization, procedure, or practice." 5
> U.S.C. § 553(b)(A).

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015); *Children's Health Care*, 900 F.3d at 1025

("This [notice-and-comment] requirement applies to all new legislative rules but excludes

interpretative rules and general statements of policy."); *Lion Oil Co. v. E.P.A.*, 792 F.3d 978, 983

(8th Cir. 2015) ("[O]nly new 'legislative' rules are required to be created pursuant to notice and

comment rulemaking, not 'interpretative rules' or 'general statements of policy.'" (internal

citations omitted)). In *Iowa League of Cities*, the Eighth Circuit adopted a *de novo* standard of

review for "the categorization of an agency's action as a legislative or interpretative rule" because

that issue "is largely a question of law." 711 F.3d at 872; *see also id.* at 867 (agreeing with other

courts that "whether a Guidance Document is a legislative rule is largely a legal, not a factual,

question, turning primarily upon the text of the Document" (citation omitted)).

> The Supreme Court has also explained,

> The term "interpretative rule," or "interpretive rule," is not further defined by the APA, and its precise meaning is the source of much scholarly and judicial debate. *See generally* Pierce, *Distinguishing Legislative Rules From Interpretative Rules, 52 Admin. L.Rev. 547 (2000)*; Manning, *Nonlegislative Rules, 72 Geo. Wash. L.Rev. 893 (2004)*. We need not, and do not, wade into that debate here. For our purposes, it suffices to say that the critical feature of interpretive rules is that they are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)* (internal quotation marks omitted). The absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules. But that convenience comes at a price: Interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Ibid.*

*Perez*, 575 U.S. at 96–97 (footnote omitted).

> The Eighth Circuit Court of Appeals has articulated somewhat more concrete guidance on

when an administrative rule is "legislative" and thus requires notice-and-comment procedures:

> "Whether or not a binding pronouncement is in effect a legislative rule that should have been subjected to notice and comment procedures thus depends on whether it substantively amends or adds to, versus simply interpreting the contours of, a preexisting rule." [*Iowa League of Cities*, 711 F.3d] at 873 (citing *U.S. Telecomm. Ass'n v. FCC, 400 F.3d 29, 34-35 (D.C. Cir. 2005)*. "Expanding the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created, is the hallmark of legislative rules." *Id.* (citations omitted).

*Children's Health Care*, 900 F.3d at 1025. Still more guidance can be drawn from the Eighth

Circuit's prior decision in *Iowa League of Cities*, 711 F.3d 844. In *Iowa League of Cities*, the

Eighth Circuit explained,

> The critical distinction between legislative and interpretative rules is that, whereas interpretative rules "simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties," a legislative rule "imposes new rights or duties." *Nw. Nat'l Bank v. U.S. Dep't of the Treasury, 917 F.2d 1111, 1117 (8th Cir. 1990)* (quoting *Jerri's Ceramic Arts, Inc. v.*

> *Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989)). When an agency creates a new "legal norm based on the agency's *own authority*" to engage in supplementary lawmaking, as delegated from Congress, the agency creates a legislative rule. *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997).

*Iowa League of Cities*, 711 F.3d at 873 (emphasis in the original).

The Court will apply these standards, taking note where appropriate of the reasoning of other courts on the same or similar issues.

### c. The *Kazarian* Policy Is Not a "Legislative" Rule Improperly Adopted Without Notice and Comment

#### i. A "Binding" Agency Statement Is Not Necessarily a "Legislative" Rule

The Court will first address Plaintiffs' mistaken notion that an agency statement that is "binding" is necessarily a "legislative" rule. Filing 38 at 19 (citing *Iowa League of Cities*, 711 F.3d at 863–64); Filing 30 at 15 (¶ 38) (alleging that "[t]he Defendant has unlawfully created a binding/legislative rule in violation of the APA and INA."). In the part of the *Iowa League of Citie*s decision on which Plaintiffs rely for this argument, the Eighth Circuit was not considering whether certain letters from the Environmental Protection Agency (EPA) were "legislative" rules, however. Instead, the Eighth Circuit was considered whether letters from the EPA concerning effluent standards under the Clean Water Act (CWA) "constituted an action 'promulgating any effluent limitations or other limitation'" such that the court had appellate jurisdiction over a judicial review action. *Iowa League of Cities*, 711 F.3d at 861–62. Specifically, the Eighth Circuit stated,

> In considering jurisdictional statutes similar to section 509(b)(1)(E), our colleagues on the District of Columbia Circuit have adopted a practical conception of whether an agency action constitutes a promulgation. That court has explained, "To determine whether a regulatory action constitutes promulgation of a regulation, we look to three factors: (1) the Agency's own characterization of the action; (2) whether the action was published in the Federal Register ....; and (3) whether the action has binding effects on private parties or on the agency." *Molycorp, Inc. v. EPA*, 197 F.3d 543, 545 (D.C. Cir. 1999) (internal citation omitted). *Molycorp* identifies the third factor as the "ultimate focus" of this test, and we agree that

33

whether an agency announcement is binding on regulated entities or the agency should be the touchstone of our analysis.

*Iowa League of Cities*, 711 F.3d at 862. It was in this context that the Eighth Circuit explained,

> "If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes 'binding.'" *Appalachian Power Co. [v. EPA]*, 208 F.3d [1015,] 1021 [(D.C. Cir. 2000)].

*Iowa League of Cities*, 711 F.3d at 863.

In contrast, when the Eighth Circuit turned to the question of whether a rule was "legislative" or "interpretive," the Eighth Circuit made clear that whether or not an agency pronouncement is "binding" does not necessarily determine whether or not it is "legislative." *Id.* at 873; *see also id.* at 855 (recognizing that "legislative" rules require notice-and-comment rulemaking, but "interpretive rules" and "general statements of policy" do not). This is so because the Eighth Circuit stated, "Whether or not a binding pronouncement is in effect a legislative rule that should have been subjected to notice and comment procedures . . . depends on whether it substantively amends or adds to, versus simply interpreting the contours of, a preexisting rule." *Id.* at 873. Although whether or not a rule is "binding" does not distinguish between "legislative" and "interpretive" rules, the Eighth Circuit made clear that whether or not an agency pronouncement is "binding" does distinguish between an "interpretive" rule and a "policy statement." *Id.* at 873 at n.17. This is so because the Eighth Circuit explained, "Because we have determined that the [agency pronouncements at issue] evince binding rules regarding bacteria mixing zones and blending, neither can be characterized as a policy statement." *Id.* at 873 n.17. The Eighth Circuit then observed, "Identifying where a contested rule lies on the sometimes murky spectrum between

legislative rules and interpretative rules"—where either can be "binding" but only the former requires notice and comment—"can be a difficult task." *Id.* at 873.[7]

Thus, Plaintiffs contention that the *Kazarian* Policy is "binding," so it is an improperly adopted "legislative" rule, has no legal merit.

           ii.  The *Kazarian* Policy Does Not Substantively Amend a Preexisting Rule

The Eighth Circuit Court of Appeals has clarified that an administrative rule is "legislative" if it "substantively amends or adds to a preexisting rule," thus "[e]xpanding the footprint of a regulation by imposing new requirements." *Children's Health Care*, 900 F.3d at 1025; *accord Iowa League of Cities*, 711 F.3d at 873 (explaining that a "legislative" rule "imposes new rights and duties" and "creates a new legal norm"). For essentially the same reasons that the Court concluded above in § II.C.3.c. that the *Kazarian* Policy is not *ultra vires* as contrary to the statute and preexisting regulation at issue, it now concludes that the *Kazarian* Policy does not substantively amend or add to either the statute or the preexisting rule or impose new requirements. The Court has already explained in detail how the *Kazarian* Policy aligns with the requirements of 8 U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h) and adheres to the preexisting burden of proof, so the Court will not repeat that discussion here. As the Fifth Circuit put it in *Amin*,

> The Policy Memo does not impose any obligations on visa applicants. The statute and regulation require applicants to prove their extraordinary ability and to provide "extensive documentation" of the type listed in the regulation. The Policy Memo does not require anything more. . . .

---

[7] Although the Eighth Circuit recognized in *Iowa League of Cities* that distinguishing between "legislative" and "interpretive" rules can be difficult, it also recognized "it is not just an exercise in hair-splitting formalism." 711 F.3d at 873. The court explained that this was so because "[n]otice and comment procedures secure the values of government transparency and public participation, compelling us to agree with the suggestion that '[t]he APA's notice and comment exemptions must be narrowly construed.'" *Id.* (quoting *Prof'ls & Patients for Customized Care v. Shalala*, 56 F.3d 592, 596 (5th Cir. 1995)).

*Amin*, 24 F.4th at 392 (also agreeing with other courts that agency documents like the challenged field manual, as amended by the *Kazarian* Policy, can be issued without notice and comment).

A matter the Court must now address is Plaintiffs' argument that the *Kazarian* Policy must have substantively amended the statute or the preexisting rule because there is purportedly evidence that the approval rate for individual immigrants seeking "extraordinary ability" visas fell dramatically from 2016 to 2018 and fell again in 2019. Filing 38 at 18 (citing Louise Radnofsky, *Athletes Seeking Green Cards Find Proving They're Exceptional Has Gotten Tougher Under Trump: As the U.S. tightens immigration policies, foreigners face higher barriers to entry on the basis of 'extraordinary ability*,' THE WALL STREET JOURNAL, Dec. 11, 2019).[8] Plaintiffs request discovery to examine further the impact of the Policy on approval rates for such visas since 2010. Filing 38 at 19. Even supposing for the sake of argument that the Court can take judicial notice of THE WALL STREET JOURNAL article on which Plaintiffs rely, it provides no relevant information. *See, e.g.*, *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 671 (E.D. Mo. 2020) (noting a split among courts on the issue and assuming that judicial notice of a newspaper article was proper on a motion to dismiss but finding the article did not contain relevant facts). The evidence of drops in approval rates after 2016 says nothing about the impact of the *Kazarian* Policy adopted more than six years earlier, not just because of the remoteness in time of such drops but because of the myriad other factors that could affect approval during that timeframe. Thus, it provides support only for a fallacious *post hoc ergo propter hoc* argument. *See* BLACK'S LAW DICTIONARY (11th ed.) 1412 (defining the principle as "[t]he logical fallacy of assuming that a causal relationship exits when acts or events are merely sequential").

---

[8] Specifically, Plaintiffs assert that the article "shows that the approval rate for individual immigrant visa petitions for permanent residence based on 'extraordinary ability' fell from 82.1% in the 2016 government fiscal year to 69.4% for the 2018 fiscal year, and subsequently to 56.3% for the 2019 fiscal year." Filing 38 at 18.

Similarly, even if extra-record discovery is permissible on an issue on judicial review of agency action that is primarily legal, it is not appropriate here. *See Iowa League of Cities*, 711 F.3d at 867 (agreeing with other courts that "whether a Guidance Document is a legislative rule is largely a legal, not a factual, question, turning primarily upon the text of the Document" (citation omitted)). This Court is not required to wait to see if more specific information becomes available through the discovery process to decide if Plaintiffs can state a claim. *Steinbuch v. Cutler*, 518 F.3d 580, 591 (8th Cir. 2008) (finding no abuse of discretion in refusing to allow discovery where a complaint lacked sufficient factual allegations to state a claim). Denial of discovery is all the more appropriate where Plaintiffs offer nothing but speculation that there is any causal connection between adoption of the *Kazarian* Policy and reductions in approval rates for "extraordinary ability" visas or that such a reduction is in fact from a substantive change in applicable standards. One reason it is a fallacy to assume that a policy is necessarily "legislative" if approval rates change after the implementation of the policy is that an "interpretive" rule could conceivably clarify agency practice or the meaning of a statute as well as the parties' and adjudicators' duties, without making any substantive change, such that greater certainty about application of a preexisting rule results in fewer approvals.

The *Kazarian* Policy is not a "legislative" rule as a matter of law and Plaintiffs are not entitled to discovery to attempt to show otherwise.

   iii. The *Kazarian* Policy Was Issued to Advise the Public and Adjudicators of the Agency's Construction of the Applicable Statutes and Rules

In contrast to a "legislative" rule, an "interpretive" rule is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Perez*, 575 U.S. at 97 (internal quotation marks and citation omitted); *Children's Health Care*, 900 F.3d at 1025 (explaining that a "legislative" rule must be contrasted with a rule "simply interpreting the

contours of" a preexisting rule); *Iowa League of Cities*, 711 F.3d at 873 (explaining that "interpretive rules simply state what the administrative agency thinks the statute means and only remind affected parties of existing duties" (internal quotation marks and citations omitted)). That is the kind of rule presented by the *Kazarian* Policy.

The Fifth Circuit concluded, and this Court agrees, that the *Kazarian* Policy "clarifies the order in which agency adjudicators evaluate the evidence." *Amin*, 24 F.4th at 392 (stating that the Policy "merely" does this). The *Kazarian* Policy clarifies that the agency adjudicator must "first objectively evaluate each type of evidence submitted to determine if it meets the parameters applicable to that type of evidence described in the regulations (also referred to as 'regulatory criteria')," *i.e.*, the criteria set out in § 204.5(h)(3) or (h)(3)(i)–(x). Filing 30-1 at 4. It also clarifies that the agency adjudicator "then should consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for the immigrant classification." Filing 30-1 at 4. Again, as explained in § II.C.3.c., the *Kazarian* Policy aligns with the requirements of 8 U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h).

Read in its entirety, the *Kazarian* Policy does more than clarify the order in which agency adjudicators evaluate the evidence, however. It also "state[s] what the administrative agency thinks the statute means and only remind[s] affected parties of existing duties." *Iowa League of Cities*, 711 F.3d at 873 (internal quotation marks and citations omitted). The *Kazarian* Policy states its limited purpose to be precisely that it "provides guidance regarding the analysis that U.S. Citizenship and Immigration Service (USCIS) officers who adjudicate these petitions should use when evaluating evidence submitted in support of Form I-140, Immigrant Petition for Alien Worker." Filing 30-1 at 1. It likewise reiterates that the "preponderance of the evidence" burden of proof applies to both steps of the analysis. Filing 30-1 at 4; Filing 30-1 at 13–14.

Thus, the *Kazarian* Policy is an "interpretive" rule as a matter of law.

      d.  The *Karazrian* Policy Was Not Subject to Notice-and-Comment Requirements

Because the *Kazarian* Policy is an "interpretive" rule, it is not subject to the notice-and-comment requirements that Plaintiffs allege should have been used to adopt it. *See*, 575 U.S. at 96; *Children's Health Care*, 900 F.3d at 1025; *Lion Oil Co.*, 792 F.3d at 983. Thus, the *Kazarian* Policy is procedurally sound, and Plaintiffs' claim to the contrary in Count I lacks legal merit.

## III. CONCLUSION

The Court concluded in § II.B.2.b. that Plaintiffs' claim in Count I is untimely, warranting dismissal for failure to state a claim. In addition or in the alternative, the Court concluded in § II.C. that Plaintiffs' claim in Count I lacks legal merit, because the *Kazarian* Policy is not *ultra vires* and because that Policy is procedurally sound. The lack of legal merit is an "insuperable bar" to relief. As the Court explained in § II.A., such an "insuperable bar" warrants dismissal for failure to state a claim on which relief can be granted. *Cf. Benton*, 524 F.3d at 870; *Parnes*, 122 F.3d at 546. Furthermore, because dismissal of the claim is for lack of legal merit, repleading cannot salvage the claim. Thus, dismissal is with prejudice. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss, Filing 31, is granted, and Count I of the Amended Complaint, Filing 30, is dismissed with prejudice.

Dated this 25th day of May, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge

39